Good morning, Your Honors, and may it please the Court. My name is Thomas Damian Pamilla. I'm an attorney with Federal Immigration Counselors, and I'm appearing on behalf of the petitioner Lester Francisco Espinoza. As shown in our opening brief, we have four main issues in this case. Today I'll be focusing primarily on the first issue, which is the Board of Immigration Appeals abused their review authority in their decision, specifically regarding the asylum claim of petitioner. As seen on the immigration judge's decision, it's card page 61, she held that the asylum application of petitioner was time-barred through the one-year bar. That was the extent of her analysis regarding the asylum application,  Why does that even matter when the board assumed that the asylum application was timely and went to the other reasons? Don't we – aren't we reviewing what the board said on the timeliness question? Correct, Your Honor. Well, our argument is that because the board assumed that the asylum application was untimely. No, it assumed that it was timely. Strike that. I thought. They assumed that it was timely. And because they assumed that it was timely, the proper procedure there would have been to remand it back to the immigration judge for him or her to decide the merits of the asylum claim, which she did not do initially. But the analysis, in terms of the facts that would be relevant to the asylum claim, those are the same as the facts that would be relevant to the withholding claim. The IJ did analyze those. And then the BIA, as I understand it, just said, okay, taking the facts as determined by the IJ, let's now see if the more forgiving standard of asylum has been met and found that it had not been. Correct. The facts are unchanged. It's not that we, the Board of Immigration and Appeals, accepted additional affidavits or anything. They applied it to a different issue, which was – which required a different burden. But that's what I'm saying. I guess, given that the BIA didn't purport to make new factual findings, why would this – why would what it did be beyond its review authority? In essence, they did make a new factual finding in that they determined that what occurred to Petitioner was not sufficient for a well-founded fear of return. Well, you just reached a different conclusion than the IJ had used. But why – do you cite – do you have any authority that says what the BIA did was improper here? Yes. Well, it's both regulation and case law. There's 8 CFR section 1003.1d, which states that the BIA will not engage in de novo review of findings of fact determined by an immigration judge. But it didn't engage in new findings of fact. I think that's the exact question that my colleagues have just asked you about, because the Board took the facts as found by the IJ and then simply applied a legal analysis to those facts. So is there a case or a regulation that forbids that? Brazilian v. Holder. It's a Ninth Circuit case as well as Rodriguez v. Holder. I'll start with Rodriguez v. Holder. This was an issue regarding reason to believe the Petitioner was a trafficker and a controlled substance. Both before the immigration judge and the BIA were the same set of facts. The BIA, however, concluded that he was a trafficker and a controlled substance. And based on the same facts the immigration judge considered, but reached a different conclusion regarding that issue. And the Ninth Circuit held that that was improper fact finding and remanded back to the immigration judge. What was that case? Rodriguez v. Holder. It's 683 Fed 3rd 1164. It's a 2012 Ninth Circuit case. I do believe Brazilian v. Holder perhaps is a little more on point. This was regarding an asylum and withholding application as well. Here the Board of Immigration Appeals, again, used the same facts that the immigration judge considered, but did so with different issues. The immigration judge granted the Petitioner asylum, but the BIA held later that given the facts of the case that he did not actually, or was not actually targeted by any of the persecutors during his time in his home country, and therefore denied the asylum application. Simply because they're using the same facts here doesn't mean that using them for an issue that wasn't before the immigration judge was proper. We don't know, basically the immigration judge denied the withholding application because she decided that it didn't meet the clear probability standard. The BIA denied the asylum application because it didn't meet the well-founded fear standard. We don't know if the immigration judge would have found him eligible for asylum had she not said it was time-barred. I'm just curious. I mean, isn't it obvious that his asylum claim was time-barred? I mean, he enters the United States in November of 1998. He doesn't apply for asylum until June of 2008, which is 10 years later, and he had already been in the U.S. for a year and a half, and it was only after he was arrested for DUI. So, I mean, what in the world possibly could make it a timely claim? There was a change in country conditions. There was a change in power in 2006, which reverted back to the Sandinistas. That was the political group that was persecuting Petitioner's family previously. They returned to power in 2006. The father started receiving death threats in 2008, 2009. The father, the mother, the sister, the stepbrother, they all still live in Nicaragua, don't they? Yes, and the father continues to receive death threats. And he had his livestock stolen. I believe the last death threat before the individual hearing was only one month prior to that. But the BIA could have easily just, like, as you said, Your Honor, affirmed the immigration judge's decision that it was time-barred, but they didn't. They assumed that it was timely. And then they went into this whole analysis of the asylum claim that was not even addressed during the immigration judge's decision. We didn't have to. Well, the immigration judge did address the withholding of removal. He did. But the burden is a lot more difficult than withholding. Simply because the withholding was denied doesn't mean that the asylum claim would have been denied. It's a lot easier to fulfill your burden of a well-founded fear than it is of a clear probability of persecution. The immigration judge never got to that issue, however, because she determined that it was time-barred. Are you – I mean, if we don't accept that argument, are you going to address the merits? Or do you want us just to go ahead and – right? I mean, because the merits are – I think it's a close question. Okay. But I'd like to hear what you have to say on that. I will address the merits. The main decision, both with the BIA and the immigration judge, was there was no past persecution. That is one of the things we strongly disagree with, obviously. There was many incidents back in the 1980s. I believe the Petitioner's father was arrested or interrogated around 30 times. The – Yeah. But the fact is, the San – the Sandinista regime ended in 1990, did it not? Approximately, yes, until 2006. And your man – your client didn't leave Nicaragua until about five years later, right, when he went to Costa Rica? Yes. So, I mean, if his claim is, oh, I was being persecuted by the Sandinistas or my family was, well, he hung around for five years after the regime had ended. Isn't that a little inconsistent with his claim? Right. After the regime ended, there was no – the risk was a lot less with them out of power. The risk only returned when they returned to power in 2006. And they continue to be in power now, which is why the fear and the dangers is still relevant today. It wasn't when he returned or when he stayed there after they left power, but now when they returned – But is there any proof in the record that they're after him as opposed to his father, his mother, his sister, et cetera? Well, it's his father primarily now, but it's an imputed political opinion that he's basing his asylum claim on because of his father. The fear is that he is the only full son of his father in Nicaragua, that if he returns, his father's political opinion would be perceived as his own and he'll face danger because of that. Well, his half-brother is still a full son of the father. Right, but – Just different mothers, right? True. But in Nicaragua, it perhaps makes a difference. But again, I think the individual we're looking to is the father here, and he has as recently as 2009 because of his position with the liberal group in Nicaragua. Combine that with the other threats received, the theft of his livestock, their history with the Sandinistas, we believe that does fulfill the well-founded fear of persecution for an asylum claim. You have about a minute left for rebuttal, if you'd like to save it. I'll save it, Your Honor. Thank you. Thank you. May it please the Court, Linda Chang for the Attorney General. This Court should deny the petition for review. The record of evidence does not compel the conclusion that petitioner  Could you speak a little more slowly and into the microphone, please? Absolutely. The record of evidence does not compel the conclusion that petitioner established past persecution or a well-founded fear of future persecution. Well, maybe you should start with the two cases that your opponent cited. Absolutely. I do not have the Rodriguez case before me, but in addressing the Brazilian case at 569 F. 3rd 403, this Court held that the Board found facts not found by the immigration judge and rejected facts found by the IJ. Therefore, it was in a violation of its own regulations. And Your Honors were correct in stating that the Board can review legal questions, questions of discretion and judgment de novo, which is exactly what the Board did here, which is why it was proper in finding that petitioner did not establish his eligibility for asylum using the same facts that the IJ had found. There were no new facts found by the Board, and petitioner has not pointed to any facts that the Board newly created or found on review or that the Board ignored that the IJ had found. Therefore, there is no violation of the review power here. Are we prohibited from considering whether the asylum claim was timely or not because the Board did not address that? The Board presumed that the asylum application was timely. Therefore, it is moot at this point as it just went ahead with the asylum, the merits of the asylum claim. Under Ventura and the related cases, that is not open to us as an alternative ground for agreeing with the Board, correct? Correct. The record evidence does not compel the conclusion that petitioner established past persecution. The events that he described were considered random acts of violence and didn't satisfy the causal connection. Why is that? Because the testimony, it seemed to me, was all about Sandinistas versus the Liberal Party and was not about just sort of random acts of violence. There was testimony that his dad was targeted because of his political views, and there's no adverse credibility finding here. So why is it a permissible inference that there's no nexus? Your Honor, it's correct that there was no adverse credibility finding here. However, the events that petitioner describes fell into the category of random acts of violence during this time of general civil strife. For example, he ---- Well, just because there's general civil strife doesn't mean that, in addition, someone can't be targeted for their politics, does it? That is correct, Your Honor. But here, the examples, the events that he describes do not fit into the category of harm occurring on account of a protected ground. And here would be political opinion, as he's alleging. Now, the ---- Well, wait, wait. That's true with respect to the things that happened to him personally, but you say that that's also true about the things that happened to his father? Yes. Maybe you could speak to that, because that's not how I read the record at all. So in the description of his father being beaten by Sandinistas in the 80s, as when he was a child, he describes them as coming into the house and beating him, asking him if he had given food to the contras, and then the harm occurred. Now, in that description, there is no clear nexus. He ---- the persecutors here have not stated that they are beating him because they believe he supports the contras. They are beating him for an act that they do not condone. For what? If not that, for what? Providing food. Now, providing food ---- Food, that's right? Correct. But that in and of itself may not necessarily be a political opinion. As the Sandinistas were in power at the time, it might have been just unlawful in general to provide food. It may have been an illegal act. We don't know the circumstances. All we do know ---- I don't ---- I just don't understand that. He testifies credibly that the people who are making the threats are Sandinista followers or Sandinistas, and it's for revenge because of people who are not following them who are with another party. They know that they are liberals with a capital L. That's the name of the party. So they want to be robbing them or killing them or beating them or cursing at them. So, I mean, his testimony is that that was the reason, and he's deemed credible. I mean, he was found credible. So I guess I don't understand how that could be considered mere random violence. Again, we don't know how widespread this type of action was, simply that if you provided food, it could then be punishable by a beating. It does not necessarily mean that his ---- But what about all his other testimony where he says the same people are the police are equal to the Sandinistas, they're all the same, they want to kill you because you are affiliated with a different political party? I mean, what do we do with that testimony? What did ---- how could the BIA come to the conclusion it came to about past persecution? That was Petitioner's belief. It does not necessarily mean that it was fact that he thought that the Sandinistas would kill you just for being associated with the liberal party. Moreover, he also states in his testimony that they did not publicly say they were liberals because you could be killed for that. So, again, if you take the testimony as a whole, it is not sufficiently persuasive to establish that there was a clear nexus of imputed or actual political opinion here for the actions that were taken by Sandinistas against his father during the 80s. What does the record show of the current situation? I gather the father still is alive and living under the Sandinista current regime since 2006, right? Yes. And Petitioner does rely on the one incident that his father has experienced in 2009, once the Sandinistas came back into power, that some cows were stolen. Now, in that event itself, there are many missing pieces. He testified that anonymous pieces of paper have been sent to his father threatening death, threatening that you shouldn't report the death. Well, he also testified who's making these threats. It's by the Sandinistas. They are Sandinista followers or Sandinistas. He does say that. And again, there is no nexus because the Sandinistas allegedly do not say I am stealing your cows because you support the Contras. They may be stealing it because they're hungry. Well, that's what he testified to, though. I think he just testified that the Sandinistas stole his cows. There is no reason, there is no basis that to believe that it was because he supported the liberals, because this is punishment for that, because we want to inflict harm upon the opposing, any supporters of the opposing party. I think the testimony flatly is they stole his cows. Well, I will have to agree to disagree at the moment on how to read the record, but I have a theoretical question for you. Assume for the sake of this question that the finding about past persecution is not supported, would we have to remand for reconsideration about well-founded fear in the future because of the difference in the burden of proof? That is, if there were past persecution, he'd be entitled to a presumption of future persecution, and that wasn't done. So would we have to remand it? There are a lot of things that need to happen first. As Your Honor has pointed out, there would need to be a finding of past persecution. Right, I'm asking the question, I know you don't agree with this, but I want you to assume that we would find that no past persecution finding is unsupported. Just assume that for the sake of the question. Would we have to remand it so that the BIA could reconsider the question of well-founded fear using the flipped presumption? Yes, Your Honor, it would have to go before the board for them to make the finding in the first instance under that scenario. However, here they already did make well-founded fear. They did, but they said he was not entitled to a presumption because they didn't find past persecution in this case. Correct, but the only reason that we could find past persecution in this case is if the record evidence compels a different conclusion. Now, even if reasonable minds could differ on the same set of facts, that itself does not compel a different conclusion, and that's what we have today. There are possibilities that there could be a nexus construed. The agency did not find that. The substantial evidence supports that. There are a multitude of other reasons that people are attacked during times of war under civil strife, but what the record shows is that Petitioner did not meet his burden of proof here with what he presented in terms of his testimony and the record evidence. And thank you. Thank you, counsel. And you have a small amount of rebuttal time remaining, Mr. Parola. Thank you. May it please the Court. In essence, I don't believe that reasonable minds can differ on this issue of past persecution. Every harm, every threat that Petitioner's family experienced in the past was solely due to their political opinion, whether it be the arrests, interrogations in the 1980s, or the threats and the theft in 2009, even the neighbors that were killed in 2009 as well, all due to their political opinion. The record is very clear that this family, specifically the father, is still a very active Liberal Party member. He's a landowner. He was persecuted in the past because of the political opinion for supporting the Contras. I'm not sure what the difference is between providing food to the Contras or providing some other type of support. We think it's pretty clear that he was persecuted because of his position with the Liberal Party. That has not changed. With the past persecution finding, we do believe remand is warranted to analyze the well-founded fear. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments that both of you have presented today.
judges: Gilman, Graber, Watford